## ADAMS EXPRESS COMPANY v. CARNAHAN.

[No. 3,559. Filed March 11, 1902. Rehearing denied June 25, 1902. Transfer denied October 15, 1902.]

PRINCIPAL AND AGENT.—*Agency.—Contract by Agent with Express Company.*—Where the complaint in an action against an express company to recover the value of property lost in transportation charges that the contract of shipment was by another who acted for plaintiff, the plaintiff is not in a position to deny the authority of the agent to make the contract. *p. 610.*

CONTRACTS.—*Acceptance of Receipt from Express Company.—Carriers.*— The acceptance from an express company by a consignor of a receipt implied an accession to its terms, thereby creating a contract equally as binding as though signed by both parties. *p. 610.*

CARRIERS.—*Contract of Shipment.—Value of Goods.—Limiting Liability.— Express Companies.*—A contract between an express company and a consignor fixing the value of the property to be transported, and stipulating against further liability, fairly made, upon a good consideration, is valid and enforceable. *p. 610.*

SAME.—*Contract of Shipment.—Value of Goods.—Limiting Liability.— Express Companies.*—Plaintiff left her diamond earrings at the home of her sister-in-law, and requested her to send them to plaintiff; the sister-in-law took the earrings to the express office and informed the agent that the package contained diamond earrings and was very valuable; the agent for the purpose of fixing the value of the package and the charges thereon, inquired of her whether the value was $50, and informed her that the express charges would be twenty-five cents on that valuation, thereupon she informed the agent that the package was far more valuable than that. To the further inquiry as to whether she would value the package at $100, she informed the agent that he might place it at that amount, but that it was far more valuable than that, and the agent wrote the value in the receipt $100. The receipt contained the provision: "Nor in any event shall the holder thereof

demand beyond the sum of $50, at which the above property is valued, unless otherwise herein expressed." *Held*, that the liability of the company was limited to $100. *pp. 608-611*.

CARRIERS.—*Contracts Limiting Liability of Company.* — *Evidence.* — Although contracts limiting the liability of common carriers are strictly construed against the carrier, the evidence and findings in actions involving the construction of such contracts are not measured by any different rules than in cases to which carriers are not parties. *p. 612*.

PRINCIPAL AND AGENT.—*Can Not Adopt Act of Agent in Part and Repudiate in Part.*—A principal who adopts the act of one professing to act for him must adopt it *in toto*, and will not be permitted to claim the benefit arising therefrom and at the same time repudiate the burden thereof. *p. 613*.

SAME.—*Carriers.*—*Shipping Contract.*—Authority to ship carries with it authority to accept the bill of lading and enter into a contract limiting the carrier's liability. *p. 613*.

From Marion Superior Court; *J. L. McMaster*, Judge.

Action by Susan E. Carnahan against the Adams Express Company to recover the value of an express package. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Albert Baker* and *Edward Daniels*, for appellant.
*R. W. McBride* and *C. S. Denny*, for appellee.

ROBY, J.—Appellee brings this action to recover the value, found to be $300, of a pair of diamond earrings. Appellant concedes liability to the amount of $100, tendered that sum before suit, and keeps its tender good. The special finding shows the execution and delivery, at the time appellant received the articles, of an instrument in terms, so far as relevant, as follows: "Read the mutual conditions of this contract, to which the shipper agrees by accepting this receipt containing the same. Adams Express Company. No. 180. (Not negotiable.) Millard Ave. Depot, Illinois, Dec. 23, 1897. Received of Mrs. J. C. Tebbetts, 1 package, valued at $100. Marked, Gen. J. R. Carnahan, Indianapolis, Ind. Which it is mutually agreed is to be forwarded to our agency nearest or most convenient to destination only, and there delivered to other parties

to complete the transportation. The care to be exercised in transporting property, and the reasonable compensation for its carriage, depend largely upon its nature and value, and the company's charges for forwarding are proportioned to the value of the property delivered to it to be forwarded and to some extent based on that value, which is an important element in fixing its charges. It is part of the consideration of this contract, and it is agreed, that the said express company are forwarders only, and are not to be held liable or responsible for any loss or damage to said property while being conveyed by the carriers to whom the same may be by said express company entrusted, or arising from the dangers of railroad, ocean or river navigation, steam, fire in stores, depots, or in transit, leakage, breakage, or from any cause whatever, unless in every case the same be proved to have occurred from the fraud or gross negligence of said express company, or their servants; nor, in any event, shall the holder thereof demand beyond the sum of fifty dollars, at which the above property forwarded is hereby valued, unless otherwise herein expressed, or unless specially insured by them, and so specified in this receipt, which insurance shall constitute the limit of the liability of the Adams Express Company. * * * Freight paid, thirty-five cents. For the company, H. O. Ellis."

The special findings further show that appellant received a sealed package containing the earrings, marked before its delivery with the address given in the contract; that the person making the delivery was a sister-in-law of appellee; that the earrings had been forgotten and left at her house in Chicago by appellee while visiting there; that appellee, through her husband, requested her to send them to him at Indianapolis; that neither appellee nor her husband saw the contract or knew of its contents until the same was sent to them at Indianapolis; that the package was not opened after it was taken to the express office; and that the

contract was all in print except the following portions which were written in ink: "December 23, 1897. * * * Mrs. J. C. Tebbetts. * * * $100. * * * Gen. J. R. Carnahan, Indianapolis, Ind. * * * H. O. "Ellis."

It was further found: That neither said defendant, at the time said contract was executed and delivered, nor its said agent, Ellis, knew what said package contained, nor its value, except that he was informed by the sister-in-law that said package contained a pair of diamond earrings, and was very valuable. That defendant's said agent, for the purpose of fixing the value of said package and the defendant's charges thereon, inquired of her whether the value was $50, and informed her that defendant's charges would be twenty-five cents on that valuation. Thereupon she informed said agent that the package was far more valuable than that, and that such amount would not cover its valuation. To the further inquiry by the agent as to whether he should place the valuation at $100, she informed said agent that he might place it at that amount, but that it was far more valuable than that; and said agent then wrote in said receipt the valuation of $100, and informed her that the charge would be thirty-five cents for the carriage of said package; that she informed said agent at the time of leaving said package with him that the earrings had been left by mistake at her house by a friend, and that she was returning the same to the owner; that she, in a general way, knew that the defendant's charges were based in part upon the value of the thing to be carried, and increased as the value increased, but the difference in said charges or the ratio of increase to valuation were matters of which she was not informed, nor had she knowledge thereof, but knew that the inquiries of said agent as to the value of said package were being made for the purpose of arriving at the charge to be made for the carriage; that she did not know the value of said package further

than that it was worth more than $100, of which she informed said agent, that no one was guilty of any bad faith in inserting or concurring in the insertion of the valuation of $100, but each was acting honestly in that behalf; that the package was lost through the carelessness or dishonesty of appellant's employes in its main office in Chicago.

The complaint sets up the written contract, and alleges that it was made with Mrs. J. C. Tebbetts, who acted therein for appellee. Appellee is not, therefore, in position to deny the authority of the agent to make the contract. *Benson* v. *Liggett,* 78 Ind. 452; *Knowlton* v. *School City of Logansport,* 75 Ind. 103; *Willison* v. *McKain,* 12 Ind. App. 78.

The acceptance of the receipt from appellant implied an accession to its terms, thereby creating a contract equally as binding as though signed by both parties. *Grace* v. *Adams,* 100 Mass. 505, 507, 97 Am. Dec. 117, 1 Am. R. 131; *Montague* v. *The Henry B. Hyde,* 82 Fed. 681; *Ballou* v. *Earl,* 17 R. I. 441, 22 Atl. 1113, 14 L. R. A. 433, 33 Am. St. 881; Ray on Neg. of Imp. Duties (freight), §35; Hutchinson on Carriers (2d ed.), §240.

It was competent for the parties to fix the value of the property to be transported, and a contract so doing, clearly stipulating against further liability, fairly made, upon a good consideration, is valid and enforceable. *Hart* v. *Pennsylvania R. Co.,* 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; *Rosenfeld* v. *Peoria, etc., R. Co.,* 103 Ind. 121, 124, 53 Am. Rep. 500; *Adams Express Co.* v. *Harris,* 120 Ind. 73, 77, 7 L. R. A. 214, 16 Am. St. 315; *Louisville, etc., R. Co.* v. *Nicolai,* 4 Ind. App. 125, 51 Am. St. 206; *Baltimore, etc., R. Co.* v. *Ragsdale,* 14 Ind. App. 406; *Stewart* v. *Cleveland, etc., R. Co.,* 21 Ind. App. 218; Hutchinson on Carriers (2d ed.), §237.

The special finding shows a valuation of the property made by the appellee's agent, with knowledge that the greater the value the higher appellant's charge for transpor-

tation would be. It is found affirmatively that both parties acted in good faith. It is true as urged by appellee's counsel that the special finding does not in terms state that the agreement was made upon a consideration, but the facts found are such as to permit no other inference, and are, therefore, regarded as showing that fact. The contract limiting liability of a common carrier must be fairly made, clear and explicit in its terms, and must be strictly construed against the carrier. *Rosenfeld* v. *Peoria, etc.; R. Co., supra; Adams Express Co.* v. *Harris, supra;* Hutchinson on Carriers (2d ed.), §270; Ray on Neg. of Imp. Duties (freight), §16.

The contract in question was made upon a printed form and contained the following stipulation: "Nor in any event shall the holder thereof demand beyond the sum of $50, at which the above property is valued, unless otherwise herein expressed." The value of the property is "otherwise herein expressed," and is fixed at $100. No term of the agreement is dispensed with or waived. The intention of the parties to limit recovery to the value of the property is emphasized, instead of being weakened. The valuation is deliberately made for two purposes only: (1) To fix the rate for carriage; (2) to fix the measure of recovery in event of loss. The contract contemplated by the parties, and therefore enforced by the courts, is not different in effect from what it would be had the printed words "fifty dollars" been erased and the words "one hundred dollars" written in their place.

The case is one of hardship. Appellee loses her property. The appellant seems to have been willing to become liable for its full value in consideration of a small increase of the amount paid to it. Appellee knew that the character of the articles made loss or larceny easy. She chose to pay transportation upon less than their full value. Taking the risk, then, it is not unfair for her to bear the loss which is in excess of the sum named. This she agreed to

do. *J. J. Douglas Co.* v. *Minnesota, etc., R. Co.,* 62 Minn. 288, 64 N. W. 899, 30 L. R. A. 860. The courts can not make a more favorable contract for her.

Judgment reversed. Cause remanded, with instructions to restate conclusions of law, and for further proceedings not inconsistent herewith.

## On Petition for Rehearing.

Roby, J.—The special finding, in addition to the facts enumerated in the opinion, shows that Mrs. Tebbetts paid defendant, as its express charges upon said package, the sum of thirty-five cents; that appellant, by its agent, concurrently with the delivery of said package to it, and at the time of its acceptance for carriage, executed and delivered to said Mrs. Tebbetts the written contract heretofore set out. The appellee did not see said contract or know of its contents until after it had been executed and delivered.

Contracts limiting the liability of common carriers are strictly construed against the carrier. Evidence and findings delivered and made in such cases are not measured by any different rules than in cases to which carriers are not parties. A reasonable construction of the facts stated in the finding shows that the valuation placed upon the package was contractual. In *Hart* v. *Pennsylvania R. Co.,* 112 U. S. 331, the court said: "It must be presumed from the terms of the bill of lading, and without any evidence on the subject, and especially in the absence of any evidence to the contrary, that, as the rate of freight as expressed is stated to be on the condition that the defendant assumes a liability to the extent of the agreed valuation named, the rate of freight is graduated by the valuation. The valuation named was the 'agreed valuation,' the one on which the minds of the parties met, however it came to be fixed, and the rate of freight was based on that valuation, and was fixed on condition that such was the valuation, and that

the liability should go to that extent and no further." *Hart* v. *Pennsylvania R. Co.,* 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 721; *Duntley* v. *Boston, etc., R. Co.,* 66 N. H. 263, 20 Atl. 327, 9 L. R. A. 449, 49 Am. St. 610; *Durgin* v. *American Express Co.,* 66 N. H. 277, 20 Atl. 328, 9 L. R. A. 453; *Elkins* v. *Empire Transportation Co.,* 81 Pa. St. 315. The use of the term "consideration" in the findings would not have added to the effect of the facts therein exhibited. The general rule as to agency is that the principal who adopts the act of one professing to act for him must adopt it *in toto,* and will not be permitted to claim the benefit arising therefrom, and at the same time to repudiate the burden thereof. Bishop on Cont. (Enlarged ed.), §1110; *Daniels* v. *Brodie,* 51 Ark. 216, 15 S. W. 467, 11 L. R. A. 81.

"Authority to ship carries with it authority to accept the bill of lading and enter into a contract limiting the carrier's liability." 1 Am. & Eng. Ency. of Law (2d ed.), 1034. The following authorities cited to the above stated proposition sustain it: *Illinois, etc., R. Co.* v. *Jonte,* 13 Ill. App. 424; *Root* v. *New York, etc., R. Co.,* 76 Hun 23, 27 N. Y. Supp. 611; *Nelson* v. *Hudson River R. Co.,* 48 N. Y. 498; *Armstrong* v. *Chicago, etc., R. Co.,* 53 Minn. 183, 54 N. W. 1059. To the same effect see, also, *Zimmer* v. *New York, etc., R. Co.,* 137 N. Y. 460, 33 N. E. 642; *Donovan* v. *Standard Oil Co.,* 155 N. Y. 112, 49 N. E. 678; *Hill* v. *Boston, etc., R. Co.,* 144 Mass. 284, 10 N. E. 836; Ray on Neg. of Imp. Duties (freight), §37; Hutchinson on Carriers (2d ed.), §§265, 266.

Those who rely upon agents in the transaction of any business always incur some risk, because of the possible failure of the agent to apprehend and carry out instructions. Contingencies frequently arise within the scope of the agency which have not been provided for by instructions. The existence of such risk does not operate in any case to release the principal from responsibility for the acts

of the agent within the scope of his authority.   The shipper of goods may always protect himself when entering into a special contract for carriage by placing the true value upon his property.   To allow him to undervalue it, thereby securing transportation at a reduced rate, and afterwards to ignore such valuation, in such actions as the one at bar, would be to make it possible for him to be "cheaply negligent and safely dishonest."

No facts are presented in this record justifying a discussion of the law applicable when collusion between a negligent and dishonest carrier and a negligent and dishonest agent is shown.

Petition for rehearing overruled.