ALBERT BERNARD *vs.* ADAMS EXPRESS COMPANY.

Suffolk.    January 19, 1910. — February 24, 1910.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Carrier*, Of goods.  *Interstate Commerce.*

The provision contained in § 20 of 24 U. S. Sts. at Large, c. 104, called the interstate commerce act, as amended by 34 U. S. Sts. at Large, c. 3591, § 7, that "no contract, receipt, rule, or regulation shall exempt" a common carrier receiving property for transportation from a point in one State to a point in another State from any liability imposed by the act, does not invalidate nor apply to an agreement contained in a receipt given in good faith by an express company to a shipper of goods and accepted by him with a complete understanding of its provisions, by which it is stipulated that unless a greater value is declared and is stated in the receipt the value of the goods shall be taken to be $50.

In an action against a common carrier of goods engaged in carrying on an interstate express business, for the loss of a package of hides of the value of about $150, which were delivered to the defendant for transportation from the plaintiff's tannery in the State of New Jersey to the plaintiff at his shop in Massachusetts, it appeared that the package was lost and that its loss was unexplained, that the contract of carriage contained in the receipt accepted by the plaintiff contained the following provision: "In consideration of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation of not exceeding fifty dollars unless a greater value is declared, the shipper agrees that the value of said property is not more than fifty dollars unless a greater value is stated herein and that the company shall not be liable in any event for more than the value so stated, nor for more than fifty dollars if no value is stated therein." It further appeared that the package was delivered by the plaintiff to the defendant without

any statement of its value or of its contents, although the agent of the defendant asked whether any value was to be declared, that the methods and precautions used by the defendant for carrying and delivering the package safely were based upon the plaintiff's agreement that its value did not exceed $50, and that, if the value of the package had been given, an additional charge would have been made for transportation and additional precautions would have been taken against loss. Section 20 of 24 U. S. Sts. at Large, c. 104, called the interstate commerce act, as amended by 34 U. S. Sts. at Large, c. 3591, § 7, provides as follows: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." The defendant admitted its liability for $50 and paid the money into court, and the only question was whether the plaintiff could recover for the value of the package in excess of that sum. *Held,* that the agreement of the parties, contained in the receipt accepted by the plaintiff, as to the value of the package in the absence of a declaration, was not a contract or receipt exempting a common carrier from liability within the meaning of the provision of the interstate commerce act above quoted, and, being a contract deliberately entered into by both parties in good faith, was binding upon both, so that the plaintiff could recover nothing in excess of the sum of $50.

KNOWLTON, C. J.   This is an action to recover for the loss of a package delivered to the defendant, a common carrier, for transportation from the plaintiff's tannery at Newark in the State of New Jersey to the plaintiff at his shop at Montello in Massachusetts.   The package contained hides whose value was $154.80, and the only question is whether the plaintiff can recover that sum or only $50.   The case was tried before a judge of the Superior Court * without a jury.   A book containing blank receipts, to be filled out and signed by the defendant's agent when goods were received for transportation, had been furnished to the plaintiff, and when this package was delivered, the plaintiff's agent, who was in charge of his office and shipping room, filled in the blank with a description of the bundle and its address.   In the column headed

---

* *Hardy*, J.   He found that the defendant's plea of tender was sustained, and found for the plaintiff in the sum of $50.75.   The plaintiff alleged exceptions.

" Value" the words " Not gvn." had been written by the defendant's teamster when he took a previous shipment. The receipt was signed for the defendant by its employee. At the head of the receipt is this statement: " The Company's charge is based upon the value of the property, which must be declared by the shipper." One of the provisions of the contract embodied in the receipt is as follows: " In consideration of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation not exceeding fifty dollars unless a greater value is declared, the shipper agrees that the value of said property is not more than fifty dollars, unless a greater value is stated herein, and that the Company shall not be liable in any event for more than the value so stated, nor for more than fifty dollars if no value is stated herein." From evidence introduced at the trial the judge made the following findings:

" 1. The method of carriage by the defendant varied with the value of the goods received for carriage.

" 2. The rates of carriage by the defendant were reasonably proportioned to the value of the goods to be carried and packages of a greater value than fifty dollars were then and a long time prior thereto carried by the defendant in a manner and with precautions for caring for them which differed from and were more costly to the defendant than the manner and the precautions then and theretofore established, adopted and used by the defendant for packages of a value not exceeding fifty dollars."

" 4. The bundle in question was delivered by the plaintiff to the defendant without any statement of its value or contents in the said receipt and agreement, although the agent of the defendant asked if there was any value.

" 5. The defendant was not further informed of the value or contents of the bundle, and there was no indication on the outside of what its contents were, if any, or of its value.

" 6. The defendant at the time of receiving the bundle was ignorant of its contents and of its value and has remained ignorant of its contents and of its value to the present time.

" 7. The bundle was received by the defendant to be carried and delivered only under and upon the terms of the receipt and agreement.

" 8. The defendant received the bundle in the belief that the value of the bundle was not more than fifty dollars.

" 9. The methods and precautions adopted by the defendant for safely carrying and delivering the said bundle were based upon the plaintiff's agreement that the value of the bundle did not exceed the sum of fifty dollars.

" 10. The defendant, before the plaintiff sued out his writ, tendered to the plaintiff the sum of fifty dollars and seventy-five cents, and has brought the same into court for the plaintiff."

" 12. The plaintiff, for a long time prior to the delivery of the said bundle, had delivered merchandise under exactly the same conditions as was delivered the bundle in question.

" 13. The plaintiff, at the time of the delivery of the said bundle and for a long time prior thereto, was familiar with the terms and conditions contained in the bill of lading or shipping receipt which was given to the plaintiff by the agent of the defendant.

" 14. The receipt was prepared by an agent of the plaintiff, and was handed to the agent of the defendant for signature at the time of the delivery of the bundle.

" 15. The plaintiff assented to the limitations of the defendant's liability contained in the receipt."

While the package was in the defendant's possession it was lost, and no explanation of its loss has been offered.   The judge found for the plaintiff for the sum of $50.75.   The plaintiff made different requests for rulings to the effect that, under the Carmack amendment in the Hepburn act, so called, (24 U. S. Sts. at Large, c. 104, § 20; 34 U. S. Sts. at Large, c. 3591, § 7, pages 593, 595,) he was entitled to recover the full value of the property.

The statute provides " that any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such com-

mon carrier, railroad, or transportation company from the liability hereby imposed."

Under the decisions in this Commonwealth, and in the Supreme Court of the United States, there is no doubt that, before the enactment of this law, the plaintiff, upon the facts and findings in the present case, would be estopped from claiming more than $50 as the value of the package. *Graves* v. *Lake Shore & Michigan Southern Railroad,* 137 Mass. 33. *Hill* v. *Boston, Hoosac Tunnel, & Western Railroad,* 144 Mass. 284. *Cox* v. *Central Vermont Railway,* 170 Mass. 129, 136. *Graves* v. *Adams Express Co.* 176 Mass. 280. *Hart* v. *Pennsylvania Railroad,* 112 U. S. 331. These decisions are founded on the common law, as it is interpreted in this Commonwealth, in the federal courts, and in the courts of many of the States. The question is whether the statute quoted above has changed the law in its application to the facts before us.

One obvious purpose of Congress was to extend the provisions of the common law so as to make a common carrier receiving property for transportation liable for loss, damage or injury to it, not only while it is in transit over his own lines, but while it is in the hands of a connecting carrier. In *Greenwald* v. *Weir,* 130 App. Div. (N. Y.) 696, it is said that this last is the only liability imposed by the statute. Although the liability stated is made statutory by the enactment, the statement of it, in the words " for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass," includes nothing beyond the liability at common law, except that for the undertaking of other carriers into whose possession the property may come. The liability is only for loss, damage or injury " caused " by the carrier, which, broadly interpreted, includes that resulting from neglect as well as that due to a positive act. It does not include the liability as an insurer against loss for which the common carrier is not culpably chargeable. The liability stated is for every kind of positive misconduct of the carrier affecting the property, and for negligence from lack of care or effort. Now what is the prohibition imposed upon the carrier by the statute? It is from exempting one's self from this liability by a contract, re-

ceipt, rule or regulation.    In other words, we have a statutory declaration that a contract of exemption from liability for negligence is against public policy and void.    This is no more than the courts have frequently declared in proceedings at common law.

But such a contract as we are considering in this case is not an exemption from liability for negligence in the management of property, within the meaning of the statute.    It is a contract as to what the property is, in reference to its value.    The purpose of it is not to change the nature of the undertaking of the common carrier, or limit his obligation in the care and management of that which is entrusted to him.    It is to describe and define the subject matter of the contract, so far as the parties care to define it, for the purpose of showing of what value that is which comes into the carrier's possession, and for which he must account in the performance of his duty as a carrier.    It is not in any proper sense a contract exempting him from liability for the loss, damage or injury to the property, as the shipper describes it in stating its value for the purpose of determining for what the carrier shall be accountable upon his undertaking, and what price the shipper shall pay for the service and for the risk of loss which the carrier assumes.    The principle was clearly pointed out in *Graves* v. *Lake Shore & Michigan Southern Railroad*, 137 Mass. 33.    The cases cited above do not go upon the ground that there is a contract of exemption from liability for negligence, but upon the ground that the contract relates directly to the elements and quality, as to value, of that which is to be transported.

In *Hart* v. *Pennsylvania Railroad*, 112 U. S. 331, 340, the court said:  " The limitation as to value has no tendency to exempt from liability for negligence.    It does not induce want of care.    It exacts from the carrier the measure of care due to the value agreed on.    The carrier is bound to respond in that value for negligence.    The compensation for carriage is based on that value.    The shipper is estopped from saying that the value is greater.    The articles have no greater value, for the purposes of the contract of transportation, between the parties to that contract.    The carrier must respond for negligence up to that value.    It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practised on the

shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss." At the close of the opinion, on page 343, is this statement: "The distinct ground of our decision in the case at bar is, that where a contract of the kind, signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations. *Squire* v. *New York Central Railroad*, 98 Mass. 239, 245."

An estoppel, founded on the agreements of the parties as to the nature or value of the property, is not an exemption from the liability recognized by the common law and affirmed in this statute as resulting from the ordinary undertaking of a carrier to transport property. The decision in *Greenwald* v. *Weir*, 130 App. Div. (N. Y.) 696, is to this effect. A very elaborate discussion of the law, with a citation of many authorities, by the Interstate Commerce Commission, is found in *In re Released Rates*, 13 I. C. C. Rep. 550, which reaches the same result. Upon the general doctrine, apart from this statute, see *Alair* v. *Northern Pacific Railroad*, 53 Minn. 160; 19 L. R. A. 764; *Barnes* v. *Long Island Railroad*, 115 App. Div. (N. Y.) 44, affirmed in 191 N. Y. 528; *Rosenthal* v. *Weir*, 170 N. Y. 148.

The decisions in *Kansas City Southern Railroad* v. *Carl*, 91 Ark. 97, and *Louisville & Nashville Railroad* v. *Warfield*, 6 Ga. App. 550, do not seem important in their application to the facts of the present case.

The findings of the judge, which were well warranted by the evidence, established the proposition that the provisions of the contract as to the value were entered into in good faith by the parties, and were not an attempt of the defendant to obtain

an exemption from liability for negligence, in evasion of the statute. It appeared that, if the value of the package had been given, an additional charge would have been made for transportation, and additional precautions would have been taken against loss, by having the package " handled under a signature passed by every man who handled the shipment from the time it was accepted until it was delivered, . . . so that there would have been a constant supervision of it."

*Exceptions overruled.*

*L. M. Friedman,* (*F. J. Sulloway* with him,) for the plaintiff.
*J. L. Hall,* for the defendant.